Thank you. Mr. Saltzman? Teeny. Teeny. So you're for the appellant and movement. Okay. Good morning, Your Honor. Good morning. Wait. Give me just one second. Okay. All right. Very good. Good morning, Your Honors. In this case, the movement, the appellant, Mrs. Montoya, asks for a stay pending the appeal. It is a hate convention case. The court is very well aware that there are four factors for a stay to take place. One is whether or not the applicant has made a strong showing of likelihood of success in the merits. Whether the applicant will be irreparably injured by the stay. Absent the stay, I'm sorry. And whether the issuance of the stay will substantially injure the other parties interested in the proceeding and where the public interest lies. It is respectfully submitted, Your Honors, that with respect to the likelihood success in the merits, we don't have to prove that we will in fact succeed in the merits, but it's just a possibility, the substantial possibility that we may succeed in the merits. The gravamen of this case, I think there are two important factors that the court has misapprehended in the district court per se. The most important one is that there is one party, and that takes me to the third prong, whether the issuance will substantially injure the other parties interested in the proceedings. There's one party that has never been heard here, and that's the child. In the district court, there was at some point the request that the child be heard, and the district court had actually admonished the attorney. And the transcript will show that, that it would not consider whether the child's preferences or whether the child had been well settled, which brings me to a point where this is a case that has been going on for close to a year, if not better. The delays which have been considerably both on the part of the respondent, it took some time to get the respondent to appear in court. But also jointly throughout the process by the petitioner as well. In bringing this case forth, the petitioner himself has requested different delays. So- Relevant to what it is that you have to establish here to be granted a stay. You started out talking about the likelihood of success on the merits, and it seems like you veered off that a little bit. Maybe you could go back to that point. Yes, Your Honor. I believe that the district court made error in two specific ways and more. One is when it did not give the child a voice in this proceeding. But counsel, your client came in and said everything that happened and the behavior of opposing party to her and the involvement of the child. And virtually nothing said anything about harm to the child, which is the only thing we're allowed to look to really in this context under the Supreme Court case. So what is there that should cause us to say that the district court was wrong? Your Honor, if I may, I do believe that the court should have conducted its own inquiry. And yes, my client did testify, and there was both affidavits and direct testimony and their own live testimony. But the effects on the child, first of all, my client could not really tell the court what effects, if any, the child has had in being exposed to such violations and domestic violence that was perpetrated. That was not even contested by the petitioner when he testified. The child, albeit was young, but I believe the court had to conduct its own inquiry. You mean of the child, needed to conduct its own inquiry of the child, or what do you mean? Well, I do believe that the court should have heard from the child, yes. Well- Not only as to preference- Two questions about that. Any authority for the proposition that in a hate convention case, the child must be heard from? That he must be heard, no, but there is district- And here, didn't the attorney essentially forfeit the opportunity for the let go of pressing and didn't raise the desire to have the child testify? I think, number one, I do believe that it was raised that they wanted the child to testify. My client did understand, and then the attorney himself did raise it. But in one of the transcripts, the court will see that at some point, the court said that if we are talking about the child's preference, or whether or not the child is well settled, there's no point in hearing from the child, and I believe the court committed a clear error in that respect. But your claim wasn't well settled. Your claim was abuse of the child. And there was no evidence to suggest that the child had anything to say about that. That wasn't, you know, the question of well settled might be a different issue, but that wasn't what was brought up. I understood, Your Honor, but I do respectfully submit that under the hate convention, Article 13, there's two parts to Article 13. The first part says that the court does not have to return the child if it is established that, and then it speaks about great risk of harm and tolerable situation. And then there is another paragraph that doesn't say anything about having to establish. It almost sounds as if the court must conduct or can conduct its own inquiry as to whether or not the child's preferences are to be taken into context. I'm sorry, your position is that you don't need to establish grave risk of physical or psychological harm or an intolerable situation? No, I'm sorry. What I meant by that was that the hate convention Article 13 specifically directs that the respondent must establish those two prompts. However, when it comes to the child, the next paragraph does not say anything about having to be established. And I do believe that the court should conduct its own inquiry. Not only that, but I also- What cases do you have in which we, a court of appeals, has reversed because the court did not on its own ask the child to come in and fill out a record? I mean, there are areas where we say that the finder of fact must fill out the whole record. But what cases do you have that suggest that in this area? I don't, your honor, but I'm respectfully submitted that he should. And there are cases where not only has the district court more than once actually heard from the child, but the courts have also appointed an attorney for the child. I do believe that the child is not just a spectator in this proceedings. That's fine. It may well be, but we operate under what the Supreme Court has told us to operate in this area. And I'm quite uncomfortable with that, frankly. I'm quite uncomfortable with that. But that's where I am. Understood, your honor. But I'm not sure that the Supreme Court has ever said that you should not hear from the child or that a responder must establish. No, they haven't said you should not. But they haven't said you should. Agreed to. Understood, judge. And I'm submitting to you that, in fact, the child should be heard. There have been other conventions that have specifically addressed this issue. And I do believe that the district court, especially in a case where there is such a record of perpetrated domestic violence, where there is one year that has passed since the retention of the child here in the U.S., that the child should at the very least be heard, that the child should be protected. And a convention has a plethora of provisions where it really talks about the child. And I do- I might write about what occurred, which is this issue was discussed. The judge expressed some skepticism as to the child's ability to testify as to the grave risk upon return of physical or psychological harm. But allowed an opportunity for the parties to submit letters with respect to this question. And counsel below, on behalf of your client, opted not to submit a letter. And isn't that forfeiture? So we have not an objection to it and no case in support of the proposition that it's necessary. So there was a decision made, maybe because it was a decision based on the welfare of the child. Testifying in these circumstances is enormously potentially damaging to a child. And so you want us to reverse, despite counsel having not pressed the issue and required the testimony of the child no matter the circumstances. That's the law you'd like to see here. Number one, yes. Number two, I appreciate the inquiry. There's two points I'd like to make about that. Number one, counsel perhaps did not press because the court immediately shut him down when it said, there is no reason to hear from the child if you're just going to tell me about the child's preferences for a couple of seconds. But put in a letter to persuade me otherwise. And put a letter, which brings me to the next point where this particular attorney could have really done certain things in this case that were necessary to be brought to the court's attention. And this is the same attorney who had requested to be let out on medical reasons, and the court actually denied that request and kept him. So I understand that under any other circumstance in a civil case, we don't really look at ineffective assistance of counsel. But I do believe the court should at the very least allow this attorney an ability to withdraw because it essentially did not participate to its fullest. All right. Mr. Tini, I don't know if you reserved rebuttal earlier. I was told there was no rebuttal, Your Honor. No rebuttal. All right. All right. Well, thank you. Thank you very much for listening. May it please the court. Good morning. Mr. Tini initially described the court below as having declined to hear from the child. A counsel for appellant was invited, as Your Honor noted, to submit a letter explaining for what purpose he wanted to have the child interviewed and what the relevance of it was. He chose not to file such a letter, not once but twice. After having been invited to do so the first time, the judge asked where this letter that never arrived was and if one was forthcoming, and he was invited to, he was given another few days to file the letter and again chose not to do so. Mr. Tini, I would think that that constitutes a waiver and certainly forecloses the issue. I don't know of any obligation that a district court has to swa sponte, explore defenses that counsel for the respondent declines to investigate themselves. Mr. Tini claimed that the defenses for which this interview might theoretically have been relevant were that the child is well settled or that the wishes of the child are relevant. Neither of those defenses were raised by the respondent, by the appellant, excuse me, at any point throughout the proceeding. And, in fact, she testified, as far as grave risk is concerned, she testified explicitly that the child had neither seen, heard, nor remembered any of the incidents, most of which took place before the child was even born, about which she testified. So there's really no, even today. Counsel, can I move you to, I think, as Judge Calabresi recognized, kind of the core issue of whether there is anything in this record from which grave risk of physical or psychological damage could be found. And we do have a case, the Sauer to Gervie Lee case, which talks about the possibility that abuse directed toward the spouse could, if there's also some abuse directed toward the child, be relevant to the grave risk question. And here there is at least one, credited by the district court, one instance, although from some time ago, of at least disciplinary physical abuse directed toward the child. Why isn't that sufficient? Suratgar described an extreme and chronic pattern of violence that was directed towards the family members. The children were exposed to it. Here we have testimony saying the child was not exposed to it, didn't see it, doesn't remember it, basically saying that the child is unaffected by these incidents and simply alleging that returning the child to Columbia will expose them to a grave risk of harm. And what incidents she did describe took place many years ago and none of them within several years prior to her departure from Columbia. But the allegations are that they did, that at least psychological abuse and manipulation recurred upon her removal of the child. Excuse me, upon? Her removal of the child coming to the United States. Well, I don't know that the court described that as abuse. There was a question as to what his motives were in posting certain information to a limited number of people and whether it was to locate a respondent, an appellant, who in fact turned out to be quite evasive in getting her into court, or whether he had some motive that was less sensitive and causing reputational harm. But I don't think that any of that, none of which, she herself posted all of this material on the public docket, by the way, and it's still there. Though the issue of sealing was raised many times, she never bothered. So the question really is, though, whether when there are allegations of this sort, we should, as a general matter, wait and see till trial is done and we find out exactly what happened, or whether these are minor enough so that the interest in the Hague Convention in having the child returned to the parent in an original country means that we don't wait that long. It's a question of whether waiting and looking further is something that we should do. Well, there was a very lengthy trial on this matter. A respondent was appellant despite the fact that deadlines were missed by them. The court was very generous with giving them multiple opportunities to resubmit things that they submitted incorrectly or that they wanted to amend. This was extremely inconvenient for the petitioner, my client, and it's caused a lot of delays. And here we are with more delays. But I do believe that respondent had every opportunity and more than what's afforded in a typical case to present any evidence and arguments she wanted, really. Notwithstanding that, on this issue of interviewing the child, she, I guess as the child's mother, also agreed that perhaps it would cause more harm than good and that there was no relevance, specifically since the one and only defense raised in this case was grave risk. And she herself testified that the child hadn't been exposed to any of the incidents she was alleging. And then made the decision not to request that the child be interviewed, though invited to do so twice. And only now, after the judgment has been issued, and quite a while went by between the last evidentiary hearing and the issuance of the judgment, does she remember that, oh, the kid must be interviewed. And has an altercation with her attorney that breaks out at the last minute and which her attorney does not describe as having been preceded by the same event she does and got another few weeks, waited to the last possible day to file this motion, giving me only a few hours, really, to file my opposition to it. And here we are. And it really appears that this case has been plagued by chronic delaying tactics on the part of the appellant. And Chafin makes it quite clear that frivolous appeals in Hague cases are not to be encouraged. And I believe that when read together with the criteria set forth in the Ken, they are meant to be applied in these cases exactingly. And I do not see a substantive chance of merit on appeal here. I don't actually really see much merit at all in the appeal. So we're requesting that the stay be denied and that the judgment be enforced. Thank you, Mr. Salzman. All right, thank you both. We will take it under advisement.